The Honorable Samuel J. Steiner
Chapter 7
Hearing Date: October 9, 2009
Hearing Time: 9:30 a.m.
Hearing Location: Seattle – Room 8206
Response Date: October 2, 2009

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON

In re

MICHAEL R. MASTRO,

                    Debtor.

Case No. 09-16841 (SJS)

DECLARATION OF JILL RICE IN
SUPPORT OF MOTION OF BANNER
BANK FOR RELIEF FROM
AUTOMATIC STAY

I, Jill Rice, declare as follows:

I am a Senior Vice President, Senior Credit Officer for Banner Bank. I make this declaration based upon my personal knowledge and understanding of the governing documents and facts of this case, and if called as a witness, I could testify competently thereto.

Banner Bank issued an Irrevocable Standby Letter of Credit dated as of August 24, 2007 (as amended from time to time, the "Letter of Credit") in favor of GEMSA Loan Services, L.P., as servicer for Wells Fargo Bank, N.A. (the "Beneficiary"), for the account of Mr. Mastro. A true and correct copy of the Letter of Credit is attached hereto as **Exhibit A**.

Mr. Mastro's obligation to reimburse Banner Bank for drafts on the Letter of Credit is evidenced by a Promissory Note dated as of September 15, 2008 (the "Promissory Note"). When the life of the Letter of Credit was extended to September 1, 2009, the Promissory Note was issued to replace an earlier note executed by Mr. Mastro that matched the original maturity

RICE DECLARATION IN SUPPORT OF
MOTION FOR RELIEF FROM STAY- 1

(09-16841)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

of the Letter of Credit. A true and correct copy of the Promissory Note is attached hereto as **Exhibit B**.

On August 18, 2009, the Beneficiary presented a sight draft for the full amount of the Letter of Credit. A copy of the sight draft is attached hereto as **Exhibit C**. On August 26, 2009, Banner Bank honored the sight draft by wiring $264,362.19 to the account designated by the Beneficiary.

As of the date hereof, Mr. Mastro has not reimbursed Banner Bank. Interest is therefore presently accruing at a rate of 3.25% per annum. Including interest at 3.25%, and attorneys' fees of $4,727.50 through September 11, 2009 incurred in bringing the Motion, the amount that will be owed by Mr. Mastro as of October 9, 2009 is not less than $270,139.79.

Pursuant to the Assignment of Deposit Account dated as of August 20, 2007 (the "Assignment of Deposit Account"), Mr. Mastro granted to Banner Bank security interests (the "Security Interests") in Savings Account Number 5422040509 with Banner Bank with an approximate original balance pledged of $264,362.19, together with (a) all interest, whether now accrued or hereafter accruing; (b) all additional deposits thereafter made to the account, (c) any and all proceeds from the account, and (d) all renewals, replacements and substitutions for any of the foregoing, as well as all of Mr. Mastro's property in Banner Bank's possession (collectively, the "Collateral"). A true and correct copy of the Assignment of Deposit Account is attached hereto as **Exhibit D**.

The Collateral consists primarily of the deposit account with Banner Bank. The amount credited to the deposit account is $278,605.66 as of September 4, 2009. I am not aware of any other secured party that holds a security interest in the deposit account that is perfected by control. Banner Bank is not party to any agreement of the kind described in RCWA 62A.9A-104(a)(2) granting control over the Collateral to any other person or entity.

Executed at Bellevue, Washington, this 14th day September, 2009.

JILL RICE

RICE DECLARATION IN SUPPORT OF
MOTION FOR RELIEF FROM STAY- 2
(09-16841)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

# EXHIBIT A

# FILE

## IRREVOCABLE STANDBY LETTER OF CREDIT

**BANNER BANK**

| | | | |
|---|---|---|---|
| **Date:** | August 24, 2007 | **Letter of Credit No.:** | 5700077 |
| **Beneficiary:** | GEMSA Loan Services, L.P., as Servicer, for the benefit of Wells Fargo Bank N.A., as Trustee | **Amount:** | USD264,362.1 |
| | Attn: Elizabeth Shenk 1500 City West Boulevard Suite 200 Houston, TX 77042 | **In Words:** | (Two Hundred Sixty Four Thousand Three Hundred Sixty Two and 19/100 United States Dollars) |
| | | **Expiration Date:** | September 1, 2008 at the office of confirming bank, Citibank, N.A., c/o Citicorp North America, Inc., 3800 Citibank Center, Building B 3rd Floor, Tampa, FL 33610 |

We hereby issue our Irrevocable Standby Letter of Credit in favor of GEMSA Loan Services L.P., as Servicer, for the benefit of Wells Fargo Bank N.A., as Trustee, for the account of Michael R. Mastro, 510 Rainier Avenue South, Seattle, WA 98144 ("Applicant").

We undertake to honor from time to time your draft or draft(s) at sight on the confirming bank not exceeding in the aggregate Two Hundred Sixty Four Thousand and Three Hundred Sixty Two and 19/100 United States Dollars (USD264,362.19). All drafts hereunder must be marked "Drawn under Banner Bank Irrevocable Standby Letter of Credit No. 5700077, dated August 24, 2007."

Presentation of drafts drawn hereunder may be made at any time on or before the expiry date hereof at the office of Citibank, N.A.'s Servicer, Citicorp North America, Inc., 3800 Citibank Center, Building B 3rd Floor, Tampa, FL 33610.

Partial Drawings and Multiple Drawings are not permitted.

Any notice to Beneficiary C/O GEMSA in connection with this Letter of Credit shall be in writing and shall be delivered in hand with receipt acknowledged, overnight courier or by certified mail (return receipt requested) to GEMSA at 1500 City West Boulevard, Suite 200, Houston, TX 77042 or to such other address for any such notices which GEMSA may hereafter specify in a written notice delivered to the undersigned.

We agree that we shall have no duty or right to inquire as to the basis upon which Beneficiary C/O GEMSA has determined to present to us any draft under this Letter of Credit.

Letter of Credit 5700077
Page 1 of 2



International Department • 2815 Second Avenue, Suite 360 • Seattle, WA 98121
206-269-8380 • Fax 206-269-8389 • www.bannerbank.com
Member FDIC, Equal Housing Lender



ANNER
BANK

This Letter of Credit is transferable in its entirety and not in part to any transferee by the confirming bank provided that submit to your application for transfer of Letter of Credit confirming bank's customary format, accompanied by the original Standby Letter of Credit and amendment(s), if any for endorsement. All references herein to the Beneficiary shall be automatically changed to such Transferee. No transfer cost or charge will be assessed upon Beneficiary.

This Credit is subject to "The International Standby Practices (1998 Revision), ICC Publication Number 590 " and, to the extend not inconsistent herewith, the Uniform Commercial Code of the State of WA.

All of the terms and conditions of this Letter of Credit are contained herein and shall not be altered except by reduction in the amount due to corresponding payments in like amount in compliance with the aforementioned terms as otherwise expressly set forth herein.

_____
Authorized Signature



EQUAL HOUSING
LENDER

International Department • 2815 Second Avenue, Suite 360 • Seattle, WA 98121
206-269-8380 • Fax 206-269-8389 • www.bannerbank.com
Member FDIC, Equal Housing Lender

 

## IRREVOCABLE STANDBY LETTER OF CREDIT *AMENDMENT*

**Date: August 22, 2008**

| | | | |
|---|---|---|---|
| **Beneficiary:** | GEMSA Loan Services, L.P., as Servicer, for the benefit of Wells Fargo Bank N.A., as Trustee | **Letter of Credit No.:** | 5700077 |
| | **Attn: Elizabeth Shenk** **1500 City West Boulevard** **Suite 200** **Houston, TX 77042** | **Current Amount:** **In words:** | **USD264,362.19** **(Two Hundred Sixty Four Thousand Three Hundred Sixty Two and 19/100 United States Dollars)** |

AMENDMENT NUMBER: 01

We hereby amend the above Standby Letter of Credit, on behalf of **Michael R. Mastro, 510 Rainier Avenue South, Seattle, WA 98144**, as follows:

1. The expiration date of this Letter of Credit has been extended to October 1, 2008.

All other terms and conditions of this Letter of Credit remain unchanged.

This amendment is subject to "The International Standby Practices (1998 Revision), ICC Publication Number 590" and, to the extent not inconsistent herewith, the Uniform Commercial Code of the Sate of WA.


Authorized Signature


P.O Box 1589 • 20021 120th Ave. N.E., Suite 101 • Bothell, WA 98041
425-806-9446 • Fax 425-806-5949 • www.bannerbank.com
Member FDIC, Equal Housing Lender

# FILE

Date: September 15, 2008

| Beneficiary: | **GEMSA Loan Services, L.P., as Servicer, for the benefit of Wells Fargo Bank N.A., as Trustee** | **Letter of Credit No.:** | **5700077** |
| --- | --- | --- | --- |

**Beneficiary:** **GEMSA Loan Services, L.P., as Servicer, for the benefit of Wells Fargo Bank N.A., as Trustee**
**Attn: Elizabeth Shenk**
**1500 City West Boulevard**
**Suite 200**
**Houston, TX 77042**

**Letter of Credit No.:** **5700077**
**Current Amount:** **USD264,362.19**
**In words:** **(Two Hundred Sixty Four Thousand Three Hundred Sixty Two and 19/100 United States Dollars)**

AMENDMENT NUMBER: 02

We hereby amend the above Standby Letter of Credit, on behalf of **Michel R. Mastro, 510 Rainier Avenue South, Seattle, WA 98144,** as follows:

1. The expiration date of this Letter of Credit has been extended to September 1, 2009.

All other terms and conditions of this Letter of Credit remain unchanged.

This amendment is subject to the "International Standby Practices (1998 revision), ICC Publication Number 590" and, to the extent not inconsistent herewith, the Uniform Commercial Code of the State of WA.



Authorized Signature



P.O Box 1589 • 20021 120th Ave. N.E., Suite 101 • Bothell, WA 98041
425-806-9446 • Fax 425-806-5949 • www.bannerbank.com
Member FDIC, Equal Housing Lender

# EXHIBIT B

# PROMISSORY NOTE



| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $264,362.19 | 09-15-2008 | 09-01-2009 | 72079223 | 201 / LFH | M004669 | 2908 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Michael R. Mastro
510 Rainier Avenue South
Seattle, WA 98144

**Lender:** Banner Bank
Seattle Corporate Banking Center
2815 2nd Ave., Suite 370
Seattle, WA 98121

COPY

---

**Principal Amount: $264,362.19**　　　**Initial Rate: 5.000%**　　　**Date of Note: September 15, 2008**

**PROMISE TO PAY.** Michael R. Mastro ("Borrower") promises to pay to Banner Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Hundred Sixty-four Thousand Three Hundred Sixty-two & 19/100 Dollars ($264,362.19) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on September 1, 2009. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning October 1, 2008, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied to Accrued Interest, Principal, Escrow, Late Charges, and Other Charges. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the The Wall Street Journal Prime Rate as published in the West Coast Edition (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each Day. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 5.000% per annum. The interest rate to be applied to the unpaid principal balance during this Note will be at a rate equal to the Index, resulting in an initial rate of 5.000% per annum. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Banner Bank, Seattle Corporate Banking Center, 2815 2nd Ave., Suite 370, Seattle, WA 98121.

**LATE CHARGE.** If a payment is 16 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $5.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased to 18.000% per annum ("Default Rate"). If judgment is entered in connection with this Note, interest will continue to accrue after the date of judgment at the Default Rate. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The death of any Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Washington without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Washington.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may


open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by Collateral described in an Assignment of Deposit Account Agreement dated August 20, 2007, in addition to any other collateral.

**LINE OF CREDIT.** This Note evidences a straight line of credit. Once the total amount of principal has been advanced, Borrower is not entitled to further loan advances. Advances under this Note may be requested either orally or in writing by Borrower or by an authorized person. Lender may, but need not, require that all oral requests be confirmed in writing. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs.

**LETTER OF CREDIT.** This Promissory Note is for the purpose of funding Letters of Credit.

**PRIOR NOTE.** This Note is a renewal of a Promissory Note dated August 20, 2007 between Borrower and Lender in the original amount of $264,362.19, with a maturity date of September 1, 2008, together with all renewals of, extensions of, modifications of, refinancing of, consolidations of, and substitutions for the Note.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

BORROWER:

X _____
Michael R. Mastro

LASER PRO Lending, Ver. 5.40.00.003 Copr. Harland Financial Solutions, Inc. 1997, 2008. All Rights Reserved. - WA Z:\LaserPRO\FIL\L020.FC TR-42227 PR-75

# EXHIBIT C



**GEMSA** Loan Services

- 1500 City West Blvd., Suite 200
  Houston, Texas 77042
- 713-458-7200
  800-456-1443
- Fax 713-583-0910
  www.gemsals.com

August 18, 2009

<span style="text-align:center">**VIA FEDERAL EXPRESS**</span>

Citibank, NA
C/O Its Servicer, Citicorp North America, Inc.
3800 Citibank Center
Building B, 3rd Floor
Tampa, FL 33610

RE:   CITIBANK, NA STANDBY LETTER OF CREDIT NO. 09676380
      BANNER BANK IRREVOCABLE STANDBY LETTER OF CREDIT NO. 5700077

Ladies and Gentlemen:

GEMSA LOAN SERVICES, L.P., as Servicer, for the benefit of Wells Fargo Bank N.A., as Trustee, submits its draft in the amount of USD $264,362.19 (Two Hundred Sixty Four Thousand Three Hundred Sixty Two and 19/100 U.S. Dollars) **drawn under Banner Bank Irrevocable Standby Letter of Credit No. 5700077, dated August 24, 2007.** The original confirming bank Citibank, N.A. Standby Letter of Credit No. 09676380 dated August 28, 2007, its amendments dated August 26, 2008 and September 16, 2008, and the issuing bank, Banner Bank Irrevocable Standby Leter of Credit No. 5700077 dated August 24, 2007 (collectively, the "Letter of Credit"), are delivered herewith. Attached is our Sight Draft delivered in connection therewith.

Thank you for your assistance.

Sincerely,

GEMSA LOAN SERVICES, L.P., as Servicer, for the benefit of
Wells Fargo Bank N.A., as Trustee

By: _____
                Beneficiary Signature
Name:  David Haley
Title:  Servicing Officer
Phone No: 713-458-7392

---

**Atlanta ● Boston ● Houston ● Minneapolis ● Newport Beach ● Seattle**
A Joint Venture of GE Real Estate and CBRE Capital Markets



## SIGHT DRAFT

Date: August 18, 2009

To:   Citibank, NA C/O its Servicer, CITICORP NORTH AMERICA, INC.
3800 Citibank Center
Building B, 3rd Floor
Tampa, FL 33610

Pay to the order of GEMSA LOAN SERVICES, L.P, as Servicer, for the benefit of Wells Fargo Bank N.A., as Trustee,
Two Hundred Sixty Four Thousand Three Hundred Sixty Two and 19/100 U.S. Dollars (U.S. $264,362.19 )
drawn under Banner Bank Irrevocable Standby Letter of Credit No. 5700077, dated August 24, 2007.

GEMSA LOAN SERVICES, L.P. as Servicer, for the benefit of Wells Fargo Bank N.A., as Trustee

By:
Beneficiary Signature
Printed Name: David Haley
Title: Servicing Officer
Phone No: 713-458-7882

**The amount drawn under this letter of credit shall be wire transferred to**
**GEMSA LOAN SERVICES, L.P. at:**
Deutsche Bank
New York, NY
ABA# 021001033
Account # 50 256 477
Name: GECRE/GEMSA Incoming Wire Account
REF: GEMSA Loan Number 35-8000898

# EXHIBIT D

# ASSIGNMENT OF DEPOSIT ACCOUNT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $264,362.19 | 08-20-2007 | 09-01-2008 | 72079223 | 201 / dc | M004669 | 2908 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

Grantor:  Michael R. Mastro
510 Rainier Avenue South
Seattle, WA 98144

Lender:  Banner Bank
Seattle Corporate Banking Center
2815 2nd Ave., Suite 370
Seattle, WA 98121

---

THIS ASSIGNMENT OF DEPOSIT ACCOUNT dated August 20, 2007, is made and executed between Michael R. Mastro ("Grantor") and Banner Bank ("Lender").

ASSIGNMENT. For valuable consideration, Grantor assigns and grants to Lender a security interest in the Collateral, including without limitation the deposit accounts described below, to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

COLLATERAL DESCRIPTION. The word "Collateral" means the following described deposit account ("Account"):

Savings Account Number 5422040509 with Lender with an approximate balance pledged of $264,362.19

together with (A) all interest, whether now accrued or hereafter accruing; (B) all additional deposits hereafter made to the Account; (C) any and all proceeds from the Account; and (D) all renewals, replacements and substitutions for any of the foregoing.

In addition, the word "Collateral" includes all of Grantor's property (however owned if owned by more than one person or entity), in Lender's possession (or in the possession of a third party subject to Lender's control), whether existing now or later and whether tangible or intangible in character, including without limitation each and all of the following:

(A) All property to which Lender acquires title or documents of title.

(B) All property assigned to Lender.

(C) All promissory notes, bills of exchange, stock certificates, bonds, savings passbooks, time certificates of deposit, insurance policies, and all other instruments and evidences of an obligation.

(D) All records relating to any of the property described in this Collateral section, whether in the form of writing, microfilm, microfiche, or electronic media.

CROSS-COLLATERALIZATION. In addition to the Note, this Agreement secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

RIGHT OF SETOFF. To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL. With respect to the Collateral, Grantor represents and promises to Lender that:

Ownership. Grantor is the lawful owner of the Collateral free and clear of all loans, liens, encumbrances, and claims except as disclosed to and accepted by Lender in writing.

Right to Grant Security Interest. Grantor has the full right, power, and authority to enter into this Agreement and to assign the Collateral to Lender.

No Prior Assignment. Grantor has not previously granted a security interest in the Collateral to any other creditor.

No Further Transfer. Grantor shall not sell, assign, encumber, or otherwise dispose of any of Grantor's rights in the Collateral except as provided in this Agreement.

No Defaults. There are no defaults relating to the Collateral, and there are no offsets or counterclaims to the same. Grantor will strictly and promptly do everything required of Grantor under the terms, conditions, promises, and agreements contained in or relating to the Collateral.

Proceeds. Any and all replacement or renewal certificates, instruments, or other benefits or proceeds related to the Collateral that are received by Grantor shall be held by Grantor in trust for Lender and immediately shall be delivered by Grantor to Lender to be held as part of the Collateral.

Validity; Binding Effect. This Agreement is binding upon Grantor and Grantor's successors and assigns and is legally enforceable in accordance with its terms.

Financing Statements. Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement. If Grantor changes Grantor's name or address, or the name or address of any person granting a security interest under this Agreement changes, Grantor will promptly notify the Lender of such change.

LENDER'S RIGHTS AND OBLIGATIONS WITH RESPECT TO THE COLLATERAL. While this Agreement is in effect, Lender may retain the rights

to possession of the Collateral, together with any and all evidence of the Collateral, such as certificates or passbooks. This Agreement will remain in effect until (a) there no longer is any Indebtedness owing to Lender; (b) all other obligations secured by this Agreement have been fulfilled; and (c) Grantor, in writing, has requested from Lender a release of this Agreement.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**LIMITATIONS ON OBLIGATIONS OF LENDER.** Lender shall use ordinary reasonable care in the physical preservation and custody of any certificate or passbook for the Collateral but shall have no other obligation to protect the Collateral or its value. In particular, but without limitation, Lender shall have no responsibility (A) for the collection or protection of any income on the Collateral; (B) for the preservation of rights against issuers of the Collateral or against third persons; (C) for ascertaining any maturities, conversions, exchanges, offers, tenders, or similar matters relating to the Collateral; nor (D) for informing the Grantor about any of the above, whether or not Lender has or is deemed to have knowledge of such matters.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default in Favor of Third Parties.** Should Grantor or any Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Grantor's or any Grantor's ability to repay the Indebtedness or perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of any Grantor, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or guarantor, endorser, surety, or accommodation party dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Grantor, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default, or at any time thereafter, Lender may exercise any one or more of the following rights and remedies, in addition to any rights or remedies that may be available at law, in equity, or otherwise:

**Accelerate Indebtedness.** Lender may declare all Indebtedness of Grantor to Lender immediately due and payable, without notice of any kind to Grantor.

**Application of Account Proceeds.** Lender may take directly all funds in the Account and apply them to the Indebtedness. If the Account is subject to an early withdrawal penalty, that penalty shall be deducted from the Account before its application to the Indebtedness, whether the Account is with Lender or some other institution. Any excess funds remaining after application of the Account proceeds to the Indebtedness will be paid to Grantor as the interests of Grantor may appear. Grantor agrees, to the extent permitted by law, to pay any deficiency after application of the proceeds of the Account to the Indebtedness. Lender also shall have all the rights of a secured party under the Washington Uniform Commercial Code, even if the Account is not otherwise subject to such Code concerning security interests, and the parties to this Agreement agree that the provisions of the Code giving rights to a secured party shall nonetheless be a part of this Agreement.

**Transfer Title.** Lender may effect transfer of title upon sale of all or part of the Collateral. For this purpose, Grantor irrevocably appoints

Lender as Grantor's attorney-in-fact to execute endorsements, assignments and instruments in the name of Grantor and each of them (if more than one) as shall be necessary or reasonable.

**Other Rights and Remedies.** Lender shall have and may exercise any or all of the rights and remedies of a secured creditor under the provisions of the Washington Uniform Commercial Code, at law, in equity, or otherwise.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Cumulative Remedies.** All of Lender's rights and remedies, whether evidenced by this Agreement or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and to exercise its remedies.

MISCELLANEOUS PROVISIONS. The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Washington without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Washington.

**Preference Payments.** Any monies Lender pays because of an asserted preference claim in Grantor's bankruptcy will become a part of the Indebtedness and, at Lender's option, shall be payable by Grantor as provided in this Agreement.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Subject to applicable law, and except for notice required or allowed by law to be given in another manner, any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Subject to applicable law, and except for notice required or allowed by law to be given in another manner, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as its true and lawful attorney-in-fact, irrevocably, with full power of substitution to do the following: (1) to demand, collect, receive, receipt for, sue and recover all sums of money or other property which may now or hereafter become due, owing or payable from the Collateral; (2) to execute, sign and endorse any and all claims, instruments, receipts, checks, drafts or warrants issued in payment for the Collateral; (3) to settle or compromise any and all claims arising under the Collateral, and in the place and stead of Grantor, to execute and deliver its release and settlement for the claim; and (4) to file any claim or claims or to take any action or institute or take part in any proceedings, either in its own name or in the name of Grantor, or otherwise, which in the discretion of Lender may seem to be necessary or advisable. This power is given as security for the Indebtedness, and the authority hereby conferred is and shall be irrevocable and shall remain in full force and effect until renounced by Lender.

**Waiver of Co-Obligor's Rights.** If more than one person is obligated for the Indebtedness, Grantor irrevocably waives, disclaims and relinquishes all claims against such other person which Grantor has or would otherwise have by virtue of payment of the Indebtedness or any part thereof, specifically including but not limited to all rights of indemnity, contribution or exoneration.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**Waive Jury.** All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

DEFINITIONS. The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Account.** The word "Account" means the deposit account described in the "Collateral Description" section.

**Agreement.** The word "Agreement" means this Assignment of Deposit Account, as this Assignment of Deposit Account may be amended or modified from time to time, together with all exhibits and schedules attached to this Assignment of Deposit Account from time to time.

**Borrower.** The word "Borrower" means Michael R. Mastro and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Default.** The word "Default" means the Default set forth in this Agreement in the section titled "Default".

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means Michael R. Mastro.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents. Specifically, without limitation, Indebtedness includes all amounts that may be indirectly secured by the Cross-Collateralization provision of this Agreement.

**Lender.** The word "Lender" means Banner Bank, its successors and assigns.

**Note.** The word "Note" means and includes without limitation all of Borrower's Promissory Notes and/or Credit Agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancing of, consolidations of, and substitutions for Note or Credit Agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS ASSIGNMENT OF DEPOSIT ACCOUNT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED AUGUST 20, 2007.

GRANTOR:

X _____
Michael R. Mastro

LASER PRO Lending, Ver. 5.37.00.003 Copr. Harland Financial Solutions, Inc. 1997, 2007. All Rights Reserved. - WA Z:\Laser PI\CFNLPL\E90.FC TR-34168 PR-75